UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN SCOTT,

               Plaintiff,                               Case No. 21-11068

v.                                         HON. MARK A. GOLDSMITH

BANK OF AMERICA, N.A., et al.,

               Defendants.

_____/

**OPINION & ORDER
(1) GRANTING DEFENDANT MADDIN, HAUSER, ROTH & HELLER PC'S MOTION
TO DISMISS (Dkt. 12), (2) GRANTING DEFENDANT BANK OF AMERICA, N.A.'S
MOTION TO DISMISS (Dkt. 14), AND (3) DENYING DEFENDANT MADDIN,
HAUSER, ROTH & HELLER PC'S MOTION FOR SANCTIONS (Dkt. 16)**

Three motions are before the Court: Defendant Maddin, Hauser, Roth & Heller PC's

(Maddin's) motion to dismiss (Dkt. 12), Defendant Bank of America, N.A.'s (BANA's) motion to

dismiss (Dkt. 14), and Maddin's motion for sanctions (Dkt. 16). For the reasons that follow, the

Court grants the motions to dismiss and denies the motion for sanctions.[1]

### I. BACKGROUND

Plaintiff Kevin Scott brings this action against Maddin and BANA based on a 2004 mortgage

with BANA, which was later foreclosed by BANA's assignee. Compl. (Dkt. 1). The essence of

the allegations is that when BANA assigned the mortgage in 2017, BANA incorrectly reported

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided
based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to
Maddin's motion to dismiss, the briefing for the motion includes Plaintiff Kevin Scott's response
(Dkt. 13), Maddin's reply (Dkt. 15), and Scott's corrected response (Dkt. 18). Scott's corrected
response states in the title that it is a response to Maddin's motion to dismiss, see Corrected Resp.
at PageID.1311, but states in the text that it is a response to Maddin's motion for sanctions, see id.
at PageID.1319. Regardless, with the exception of one page, it is identical to Scott's first response
to Maddin's motion to dismiss. In addition to BANA's motion to dismiss, the briefing for the
motion includes Scott's response (Dkt. 19) and BANA's reply (Dkt. 20). In addition to Maddin's
motion for sanctions, the briefing for the motion includes Scott's response (Dkt. 17).

Scott's outstanding balance, and—based on this incorrect payment history—Scott became subject to a judgment of foreclosure brought by the assignee in state court.  Id. ¶¶ 11–13, 26.  The assignment of the mortgage with the incorrect payment history was allegedly caused by the mishandling of Scott's mortgage payments by Maddin, BANA's counsel, which received payments pursuant to a court order issued in a previous federal-court case filed by Scott in this district in 2012.  Id. ¶¶ 29–32; see also Resp. to BANA Mot. to Dismiss at 1–2.

Scott filed that 2012 lawsuit, Scott v. Bank of America et al., No. 12-12864, after BANA had initiated foreclosure proceedings against him.  In that action, Scott alleged that BANA cashed checks he had mailed but either did not credit payments to his loan account or misapplied payments.  Am. Compl. ¶ 20 (No. 12-12864, Dkt. 6).  Shortly after filing suit, in July 2012, Scott paid BANA an amount sufficient to reinstate the loan and bring it current, thereby causing BANA to cease foreclosure proceedings, but he disputed the payment in the suit.  9/4/15 Order at 3 (No. 12-12864, Dkt. 169).  On January 24, 2013, the Hon. David Lawson issued an order directing Scott, for the duration of the case, to make future mortgage payments through Maddin, BANA's counsel in that case, and to deliver payments so that they were received by Maddin on or before the 25th of each month before payment was due.  1/24/13 Order at 4 (No. 12-12864, Dkt. 64).

The proper payment amount for specific periods of the mortgage was also determined in the 2012 case.  On May 10, 2013, Magistrate Judge Michael Hluchaniuk held an evidentiary hearing to determine the amount that Scott owed under the mortgage, beginning with the July 2012 payment, which was the first payment following the reinstatement of the mortgage.  4/2/13 Order Setting Evid. Hr'g (No. 12-12864, Dkt. 72).  After the hearing, the magistrate judge issued an order in which he found that "the correct amount of the payments due under the terms of the mortgage" was $3,102.07 for each of July, August, and September 2012 and $2,888.98 for each

subsequent period.  5/13/13 Order at 6 (No. 12-12864, Dkt. 82).  The parties did not make any objections to the magistrate judge's order.

In the present action, Scott asserts that his claims against Maddin arise out of its collection of payments pursuant to the order issued by Judge Lawson.  He alleges that, as required by the order, he sent to Maddin checks through which he made out his monthly mortgage payments, which the firm collected but either failed to cash or failed to apply to his mortgage.  Compl. ¶ 32; Resp. to BANA Mot. to Dismiss at 1.  Consequently, he states in his response to the motions to dismiss, $57,779.60 that he paid on his mortgage "disappear[ed]" and was not credited to his loan balance. Resp. to BANA Mot. to Dismiss at 1–2.

According to Scott, because Maddin failed to either cash checks or credit payments, when BANA assigned his mortgage to Wilmington Savings Society (Wilmington) on August 1, 2017, BANA transmitted incorrect information about his loan balance.  Compl. ¶ 13; Resp. to BANA Mot. to Dismiss at 2.  In his complaint, he alleges that, when BANA assigned his mortgage, it stated that the outstanding balance was $184,017.46.  Compl. ¶ 13.  He maintains, however, that his outstanding balance at the time was $46,419.75.  Id. ¶ 11.  Thus, he claims his outstanding balance was overstated by $137,597.71.  Id. ¶ 13.  Scott states that between 2004 and 2017, he made monthly payments that were timely and, for some payments, exceeded the required amount. Id. ¶ 23.  For instance, Scott alleges that, each month between June 2004 to December 2010, he paid at least the required monthly payment of $2,198.48, including a late fee if warranted.  Id. ¶ 24.  And between May 2013 to May 2017, he exceeded his required monthly payment by paying $2,888.98.  Id. ¶ 25.[2]

---

[2] Scott does not explain why the alleged overstatement of principal balance ($137,597.71) far exceeds the dollar amount of checks he claims was not properly credited ($57,779.60).  This unexplained discrepancy is not material to this Court's decision.

The errors he attributes to BANA include its failure to credit the funds that he paid beyond his required monthly payment to fund his escrow account, to return to him money remaining in the escrow account at the end of each year, to apply extra funds to reduce his principal balance, and to properly handle homeowner's insurance premiums. Id. ¶¶ 14–16. In addition, Scott alleges that, before and after assigning the mortgage, BANA sent him letters that falsely reported his balance. Id. ¶ 18.

Scott maintains that because of the erroneous information BANA sent Wilmington about his balance, he became subject to foreclosure proceedings in Michigan's Oakland County Circuit Court, and a judgment of foreclosure was entered against him. Id. ¶¶ 26–27; Resp. to BANA Mot. to Dismiss at 2. On June 29, 2018, the Hon. Cheryl Matthews of that court granted Wilmington's motion for summary disposition, finding that there was no genuine factual dispute that, beginning in May 2013, Scott failed to make payments on his mortgage, and, therefore, Wilmington was entitled to a judgment of foreclosure. Wilmington Savings Fund Soc. v. Scott, No. 17-161749-CH (Oakland Cnty. Cir. Ct. Oct. 30, 2017) (Dkt. 12-14). On August 20, 2019, the Michigan Court of Appeals affirmed the grant of summary disposition. Wilmington Savings Fund Soc. v. Scott, No. 344903 (Mich. Ct. App. Aug. 20, 2019) (Dkt. 12-15). The Michigan Supreme Court denied Scott's application for leave to appeal. Wilmington Savings Fund Soc. v. Scott, No. 160504 (Mich. March 27, 2020) (Dkt. 12-16).

Scott then filed this action. He brings two claims against BANA: (i) violation of the Truth in Lending Act (TILA) and (ii) breach of contract. Compl. ¶¶ 34–36, 66–71. He brings five claims against Maddin: (i) innocent misrepresentation, (ii) conversion, (iii) breach of fiduciary duty, (iv) breach of contract to which Scott was a third-party beneficiary, and (v) promissory estoppel. Id. ¶¶ 76–105. And he brings five claims against both Defendants: (i) violation of the Michigan

4

Consumer Protection Act (MCPA), (ii) negligent hiring/supervision, (iii) silent fraud, (iv) fraudulent concealment, and (v) unjust enrichment. Id. ¶¶ 37–65, 72–75.

## II. ANALYSIS[3]

The Court first discusses the motions to dismiss, which Defendants bring pursuant to Federal Rule of Civil Procedure 12(b)(6). Next, it addresses Defendants' requests made under 28 U.S.C. § 1927 for an award of attorney fees and costs incurred in filing the motions. It then examines Maddin's motion for Rule 11 sanctions. The Court finds that res judicata and collateral estoppel preclude this action, and, therefore, Defendants are entitled to a dismissal of Scott's claims.[4] It denies the request for attorney fees and costs. And it determines that sanctions are not warranted under Rule 11.

### A. Motions to Dismiss

---

[3] While motions to dismiss under Rule 12(b)(6) typically test whether a complaint alleges sufficient facts to state a plausible claim for relief, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), a complaint is also subject to dismissal under Rule 12(b)(6) "when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy," 5B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 1357 (3d ed. 1998). For this to occur, "the applicability of the defense has to be clearly indicated and must appear on the face of the pleading to be used as the basis for the motion." Id. The preclusive effect of res judicata or collateral estoppel is one such affirmative defense that is frequently considered on a motion to dismiss under Rule 12(b)(6). See Solis v. Global Acceptance Credit Co., L.P., 601 F. App'x 767, 771 (11th Cir. 2015) (explaining that res judicata "may be raised in a Rule 12(b)(6) motion where the existence of the defense can be determined from the face of the complaint."). In evaluating a res judicata or collateral estoppel defense presented through a Rule 12(b)(6) motion, a court may take judicial notice of its own records and the records of other courts. Id.

[4] Because the Court grants the motion to dismiss on the basis of res judicata and collateral estoppel, it need not discuss Defendants' argument that the Rooker-Feldman doctrine bars Scott's claims.

The Court denies Scott's request, as stated in his corrected response, to strike Maddin's motion for failure to seek appropriate concurrence. Resp. at PageID.1319. It is not clear which motion Scott seeks to strike, but, regardless, the exhibit Scott attaches to his motion in support of his request, which is an email from Maddin's counsel to Scott's counsel, indicates that Maddin sought concurrence for a motion to dismiss on certain grounds. See Pl. Ex. A-O at 2 (Dkt. 18-1). Maddin then filed a motion to dismiss that accorded with the description contained in the email. See Maddin Mot. to Dismiss.

In the motions to dismiss, Maddin and BANA argue that res judicata and collateral estoppel bar Scott's claims in part due to the litigation in the Oakland County Circuit Court and the Michigan Court of Appeals.[5] Maddin Mot. to Dismiss at 9–13; BANA Mot. to Dismiss at 10–14. The Court discusses res judicata and collateral estoppel in turn.

### 1. Res Judicata

Under the legal doctrine of res judicata, often referred to as claim preclusion, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147, 153 (1979). The purpose of the doctrine is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94 (1980). Defendants' asserted basis for res judicata includes the state-court action. "[F]ederal courts are required to give the judgments of state courts the same preclusive effect as they are entitled to under the laws of the state rendering the decision." Exec. Arts Studio v. City of Grand Rapids, 391 F.3d 783, 795 (6th Cir. 2004). Thus, Michigan law governing res judicata determines whether the litigation in the Oakland County Circuit Court and the Michigan Court of Appeals has preclusive effect in this action. See Smith v. Lerner, Sampson & Rothfuss, L.P.A., 658 F. App'x 268, 275 (6th Cir. 2016) (explaining that "[f]ederal courts look to the rendering state's law to determine the preclusive effect that attaches to the rendering state's judgments").

Under Michigan law, res judicata bars litigation of a claim in a "second, subsequent action" when "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first."

---

[5] Because the Court finds that the state-court action has preclusive effect, it need not address Defendants' arguments that the 2012 case and another case Scott filed in 2016 after BANA commenced foreclosure proceedings a second time, case number 16-13734, Scott v. Trott Law, P.C., also bar Scott's claims.

Adair v. State, 680 N.W.2d 386, 396 (Mich. 2004). Michigan courts take a "broad approach to the doctrine of res judicata," which bars "not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." Id.

In responding to Defendants' arguments that res judicata precludes his claims due to the litigation in state court, Scott focuses on the second and third elements. Resp. to BANA Mot. to Dismiss at 2, 8–9, 14–16.[6] He asserts that the state-court action involved different parties and that he could not have brought his claims in that action. Id.

### a. Same Parties or Their Privies

For res judicata to apply, Michigan law does not require that the parties in both actions be identical. Rather, "[t]he parties to the second action need be only substantially identical to the parties in the first action, in that the rule applies to both parties and their privies." Peterson Novelties, Inc. v. City of Berkley, 672 N.W.2d 351, 359 (Mich. Ct. App. 2003). Neither BANA nor Maddin was a party to the state-court action, which Wilmington brought against Scott. Therefore, the question is whether privity with Wilmington is established for either or both Defendants.

Under Michigan law, "privity has been defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." Sloan v. Madison Heights, 389 N.W.2d 418, 422 (Mich. 1986) (punctuation modified). Privity does not require a perfect identity of interests—it is sufficient if there exists (i) a "substantial identity of interests" and (ii) a "working functional relationship" in

---

[6] Scott's response (and corrected response) to Maddin's motion to dismiss and his response to BANA's motion to dismiss are substantially identical.

which (iii) "the interests of the nonparty are presented and protected by the party in the litigation." Bates v. Twp. of Van Buren, 459 F.3d 731, 734 (6th Cir. 2006) (punctuation modified).

BANA contends that it is in privity with Wilmington through an assignor-assignee relationship, as it transferred its rights to the mortgage to Wilmington, and those rights were directly at issue in the foreclosure action. BANA Mot. to Dismiss at 14. The Court agrees that BANA is in privity with Wilmington on this basis. See Taylor v. Sturgell, 553 U.S. 880, 894 (2008) ("[N]onparty preclusion may be justified based on a variety of pre-existing substantive legal relationship[s] between the person to be bound and a party to the judgment. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor.") (internal citation omitted); see also Wyler v. Bank of New York Melon, No. 329153, 2016 WL 6825832, at *3 (Mich. Ct. App. Nov. 17, 2016) (applying federal law and finding that "[m]ortgage service providers . . . are in privity with mortgagees . . . for purposes of res judicata."); Duke v. Nationstar Mtg., LLC, 893 F. Supp. 2d 1238, 1247–1248 (N.D. Ala. 2012) (explaining that courts have found that privity exists between a mortgagee and its assignee of the mortgage under state-law definitions of privity similar to Michigan's, because the mortgagee and assignee share an identity of interests in the subject matter of the litigation and represent the same legal right).

Maddin asserts that it is in privity with BANA through the attorney-client relationship. Maddin Mot. to Dismiss at 13 (citing Wallace v. JPMorgan Chase Bank, N.A., No. 13-13862, 2014 WL 4772029, at *4 (E.D. Mich. Sept. 24, 2014), aff'd as modified sub nom. Wallace v. JPMorgan Chase Bank, N.A., 628 F. App'x 940 (6th Cir. 2015) ("Attorneys are considered privies of their clients for the purposes of res judicata.")). Scott does not respond to Maddin's arguments about privity and, therefore, may be deemed to have conceded the point. See Mekani v. Homecomings

Fin., LLC, 752 F.Supp.2d 785, 797 (E.D. Mich. 2010).  But even considering the merits of the issue, the Court finds that privity is satisfied as to Maddin.

In harmony with Michigan law on privity, which analyzes identity of interests and a working functional relationship within a particular context, various courts have explained that the determination of whether privity exists is a functional inquiry, which focuses not solely on the formalities of legal relationships but the circumstances of those relationships and the reasons for holding a person bound by a judgment.  See, e.g., Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 346 (2d Cir. 1995) ("Whether there is privity between a party against whom claim preclusion is asserted and a party to prior litigation is a functional inquiry in which the formalities of legal relationships provide clues but not solutions."); Crane v. Comm'r of Dep't of Ag., Food, and Rural Res., 602 F. Supp. 280, 285 (D. Me. 1985) ("The applicability of res judicata generally and preclusion by representation specifically 'must be determined as a matter of substance and not of mere form,' based in part on an identification of the interests advanced in the first proceeding.") (quoting Chicago, Rock Island & Pac. Ry. Co. v. Schendel, 270 U.S. 611, 620 (1926)); Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, 18A Federal Practice and Procedure: Jurisdiction § 4448 (3d ed. 1998) (stating that courts increasingly apply a functional analysis and recommending that, as part of this approach, courts look to the reasons for holding a person bound by a prior judgment).  Similarly, courts have stated that the doctrine of privity is to be applied with flexibility.  See, e.g., United States v. ITT Rayonier, Inc., 627 F.2d 996, 1003 (9th Cir. 1980). Indeed, courts have found privity when relationships are not the prototypical examples of privity but are, nevertheless, sufficiently close for res judicata to apply.  See, e.g., Amalgamated Sugar Co. v. NL Indus., Inc., 825 F.2d 634 (2d Cir. 1987) (finding that, in dispute over the validity of a corporation's "poison pill," the relationship of a shareholder and the corporation was sufficiently close to support a finding of privity and, therefore, preclude the shareholder's relitigation of

validity in state court, after a federal court had entered a consent judgment in litigation between the corporation and its acquiring corporation).

The circumstances of this ongoing dispute fully support Maddin's invocation of privity. As counsel for BANA, it played a role traditionally sufficient for a finding of privity. See Wallace, 2014 WL 4772029, at *4. But its role in this saga went beyond a lawyer's traditional role. Here, Judge Lawson's order directing Scott to tender his mortgage payments to Maddin created a highly interactive relationship between all three parties in the present action. As it notes in its motion, Maddin was enlisted, through the order, to act as an agent of BANA in its receipt of Scott's payments and its forwarding of those payments to BANA. See Maddin Mot. to Dismiss at 1. Thus, Maddin did not simply act as an attorney for BANA. Rather, the order at issue gave Maddin a more expansive role—as an agent that collected mortgage payments on behalf of the principal BANA.

This deputization, which established a working functional relationship between BANA and Maddin, means that Maddin stands in the shoes of BANA. And because of that status, it is in privity with Wilmington, just as BANA is in privity with Wilmington. All of these entities shared the same interest: establishing the correct balance owed by Scott. The functional principal-agent relationship between BANA and Maddin, in addition to its shared interests in the amount and proper handling of the mortgage payments, were directly at issue in the foreclosure action brought by Wilmington.

Therefore, the second element of res judicata—that both actions involve the same parties or their privies—is met.

**b. The Matter in the Second Case Was, or Could Have Been, Resolved in the First Case**

Res judicata applies when the matter in the second case was or could have been resolved in the first case. Adair, 680 N.W.2d at 396. The Michigan Supreme Court has explained that it

10

recognizes two ways to satisfy this element: the "same transaction test" and the "same evidence test." Id. at 397. The same transaction test provides that "the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give[s] rise to the assertion of relief." Id. (punctuation modified). "Whether a factual grouping constitutes a 'transaction' for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, [and] whether they form a convenient trial unit." Id. at 398 (punctuation modified, emphasis in original). The same evidence test provides that "a second suit is barred if the evidence needed to sustain the second suit would have sustained the first, or if the same facts were essential to maintain both actions." Id. at 397 (punctuation modified) (explaining that, under the same evidence test, "the definition of what constitutes a cause of action is narrower than under the transactional test").

Maddin and BANA argue that Scott's claims in this action present the same questions of fact that were presented in the state-court action: whether Scott is not in default of his mortgage based on payments tendered to Maddin pursuant to Judge Lawson's order and whether his payments were properly applied. Maddin Mot. to Dismiss at 11–12; BANA Mot. to Dismiss at 12. They assert that those questions were resolved by the Oakland County Circuit Court, which was affirmed by the Michigan Court of Appeals. Maddin Mot. to Dismiss at 12; BANA Mot. to Dismiss at 12– 13. They argue that Scott's claims are effectively new legal theories as to why foreclosure was improper, tied to already-determined facts. Maddin Mot. to Dismiss at 13; BANA Mot. to Dismiss at 13. In addition, they contend that Scott's claims are based on the same transaction as the state-court action: a lack of default based on, among other things, checks tendered to Maddin. Maddin Mot. to Dismiss at 12–13; BANA Mot. to Dismiss at 13.

The Court finds that the claims satisfy both the same transaction test and the same evidence test. The facts underlying and essential to maintaining Scott's claims in the present action were

determined in the state-court litigation. Even if these matters were not already determined, the claims could have been raised in the previous action because they arose from the same transaction.

In the proceedings before the Oakland County Circuit Court, Wilmington filed a judicial foreclosure action against Scott on October 30, 2017. Wilmington, No. 17-161749-CH. Wilmington alleged that Scott was past due on his May 2013 mortgage payment, in addition to every mortgage payment thereafter, and that it had exercised its right to accelerate the debt pursuant to the terms of the mortgage. Wilmington Compl. ¶¶ 11–12, 19 (Dkt. 14-3).

In response, Scott asserted that he been making monthly payments since 2013 by sending checks to Maddin. Wilmington, No. 344903 at 2 (describing the proceedings before the Oakland County Circuit Court). As support, he submitted in his pleadings copies of checks made out to BANA, which were dated from June 2013 to October 2015 and which he stated he sent to Maddin. Id. He also submitted signed acknowledgements from individuals at Maddin who acknowledged acceptance of certain checks. Id. These acknowledgements covered payments made each month beginning in June 2013 and ending in October 2014, with the exception of July 2014. Id.

Wilmington filed a motion for summary disposition, seeking a judgment of foreclosure on Scott's property. 6/29/18 Op. and Order, Wilmington, No. 17-161749-CH. It contended that there was no genuine factual dispute that Scott was past due on the May 2013 payment and all subsequent payments. Id. at 3. In opposition, Scott stated that, through the checks, he had produced "years of payments," which rebutted Wilmington's argument that he had not made any payments since May 2013. Wilmington, No. 344903 at 3. In a hearing on the motion, Scott's counsel argued that, because of the order that required payments to be submitted to Maddin, the checks raised a genuine factual dispute as to whether Scott made timely mortgage payments. Id.

On June 29, 2018, Judge Matthews issued an opinion granting Wilmington's motion for summary disposition. 6/28/19 Op. and Order, Wilmington, No. 17-161749-CH. She explained

Scott's arguments in opposition to Wilmington's motions, stating that "Scott argues that [Wilmington] has not validated the debt and that [Wilmington] has no basis to accelerate the debt because all payments have been timely made and paid in full.  Scott alleges that the debt is non-existent." Id. at 4.  She also described Scott's contention that "all of his payments were timely made and paid in full" because "he tendered . . . checks to Maddin [] and some of the checks were accepted by Maddin." Id. at 5.

In rejecting Scott's arguments and finding that he had not created a factual question as to whether he made all payments in a timely manner and in full, Judge Matthews found that "the copies of the checks [that Scott sent Maddin], correspondence, and the ledger attached show that some of the checks were not written for the required amount and/or that Maddin Hauser returned some of the checks." Id.

Thus, Judge Matthews made a finding on the motion for summary disposition that there was no genuinely disputed factual issue that Scott had not paid the proper amount.  With this finding, she decided the issue of whether Scott had made sufficient monthly mortgage payments.

In an opinion affirming Judge Matthews's grant of summary disposition, the Michigan Court of Appeals likewise determined that Scott's checks delivered to Maddin were not made out for the required amount.  On appeal, Scott made two arguments.  The first argument was that the checks he delivered to Maddin raised a genuine factual dispute as to whether he made timely payments. Wilmington, No. 344903 at 4.  As the Michigan Court of Appeals explained, he argued that he was "current" on his payments, "having made all payments since the federal court ordered him to make mortgage payments to [BANA's] attorneys on the 25th of each month." Id.  The court noted that, since the order, Scott had submitted approximately 30 checks to Maddin that were made out to BANA in the amount of $2,889.89 each. Id.  The first check was submitted on June 25, 2013, and the last check was submitted on October 25, 2015. Id.  The second argument was that the

Oakland County Circuit Court should have allowed for additional discovery so that he could produce Judge Lawson's order requiring him to make payments to Maddin—and, if it had considered the order, the outcome would have been different. Id. at 4, 5.

The Michigan Court of Appeals rejected both arguments. It held that Scott's submission of checks to Maddin was insufficient to create a factual question as to whether he made his mortgage payments. Id. It found that "the record [was] clear" that the checks from 2013 to 2015 submitted to Maddin were never deposited. Id. at 5. It explained that the checks were not deposited because they did not cover the full amount owed for the months of July, August, and September 2012. Id. Specifically, they did not cover the $3,102.07 that the magistrate judge in the 2012 case determined Scott owed for those months. Id. Instead, the checks were written for $2,888.98. Id. The Michigan Court of Appeals also determined that, pursuant to the mortgage, "the lender could elect to reject partial payments," which the checks that Scott sent to Maddin represented because they were not made out for the correct amount. Id. It concluded that "Scott's claim that there is at least a question of whether the payments were made simply because the checks were presented to [BANA's] counsel, [Maddin], fails because the payments were never applied to the mortgage"— again because, according to the court's reasoning, those payments constituted insufficient, properly rejected partial payments. Id. at 5–6.

Thus, like the Oakland County Circuit Court, the Michigan Court of Appeals made a finding that there was no genuine factual issue that Scott had not made the required monthly mortgage payments.

The court also held that the Oakland County Circuit Court did not err when it concluded that there was not a fair likelihood that further discovery would yield support for Scott's position that he was current on his mortgage payments. Id. It determined that even if the order from the 2012 case were produced, it would not support Scott's position. According to the court, regardless of

14

whether Scott delivered payments to Maddin as directed by the order, "the fact remained that the checks were not deposited"— and that was because, as the court explained in addressing Scott's first argument, they were not made out for the right amount.  Id. at 5.  The court proceeded to determine that, after Scott reinstated his mortgage in July 2012, no other payment was made until 2015, and that payment was applied to April 2013.  Therefore, Scott failed to make his mortgage payments, and Wilmington was entitled to a judgment of foreclosure.  Id.

In the present case, Scott's claims are based on the allegations that he complied with the terms of Judge Lawson's order by delivering payments to Maddin and that, if Maddin had acted in accordance with the order, it would have forwarded the checks to BANA, BANA would not have incorrectly reported Scott's payment history, and Scott would not have suffered foreclosure. Compl. ¶¶ 13–14; 26–33; Resp. to BANA Mot. to Dismiss at 1–2.  He alleges that Maddin's mishandling of his payments was "a proximate cause" of the incorrect payment history that BANA transmitted to Wilmington when it assigned the mortgage.  Resp. to BANA Mot. to Dismiss at 1. In addressing Defendants' res judicata arguments, he contends that, pursuant to the order, he "made the requisite payments in the proper amount to the ordered party," which were "sufficient to defeat a foreclosure action," and that he "has not been afforded a single opportunity to bring claims relating to this order in any venue."  Id. at 5 (emphasis in original).

However, Scott raised in state court the precise issue of whether, because he made payments to Maddin in accordance with the order, his debt was non-existent, such that he should not be subject to foreclosure.  As proof, he relied upon the checks tendered to Maddin between June 25, 2013 and October 25, 2015.  The Oakland County Circuit Court and the Michigan Court of Appeals, in considering the checks Scott sent to Maddin, found that Scott did not make payments in the correct amount.  This factual finding defeats claims against Maddin premised on its alleged mishandling of payments because if the state courts in the prior action found that Scott did not

tender the correct amount, Maddin could not have been the cause of any harm to Scott. And it could not have been the cause of the assignment of a mortgage with an erroneous payment history—or a foreclosure premised on that erroneous payment history—upon which Scott's claims against BANA are based.

In addition, Scott's claims against both Defendants are premised on the allegation that he made all payments on time and in full since 2004 and even exceeded his required monthly payment for 2013 and beyond by paying $2,888.98. Any report of a default or missed payments, therefore, was attributable to the errors of Maddin and BANA. But the finding by the Oakland County Circuit Court that the checks made out for $2,888.98 were not in the correct amount, followed by the finding by the Michigan Court of Appeals that BANA was entitled to reject payments in that amount from 2013 to 2015 because the payments were insufficient, defeats his claims.

Accordingly, the same facts and evidence are essential to the maintenance of both actions, which satisfies the third element of res judicata.

Alternatively, even if the state courts did not determine that the payments Scott made to Maddin were insufficient, Scott could have brought his claims against Maddin and BANA in state court. The claims arise from the same set of operative facts as the state-court litigation: Scott's allegations that he was not in default and that he made his mortgage payments on time and in full, based on checks delivered to Maddin in accordance with Judge Lawson's order. The facts and circumstances underlying Scott's claims here were the subject of the state-court litigation. Adair, 680 N.W.2d at 398. The state-court litigation concerned whether Scott had made timely and sufficient monthly mortgage payments and whether the payments were properly applied or rejected, such that Wilmington was entitled to foreclose on the mortgage. If Scott contends that the foreclosure was the result of unlawful conduct by Maddin and BANA, he could have brought his claims in that action.

Scott, however, states that that there was "no plausible vehicle for [him] to bring these claims, alleging that his mortgage was assigned with bad history based on these missed payments, that occurred after the conclusion of the 2012 BANA Federal Court Litigation." Resp. to BANA Mot. to Dismiss at 15. But this statement completely omits the existence of the state-court action that followed the federal-court litigation. Scott also argues that he could not have brought his claims "in any of the prior litigation, due to relying on newly discovered evidence that was not presented until late in 2017." Id. However, Wilmington filed the case in Oakland County Circuit Court on October 30, 2017, and the case was still ongoing at the time at which Scott asserts he discovered relevant evidence. Wilmington did not file its motion for summary disposition until April 2018. Scott filed his response, and the court held a hearing on the motion, in May 2018. Given this timeline of events, Scott's discovery of relevant evidence "late in 2017," shortly after the foreclosure action commenced and well before briefing and oral argument on the motion for summary disposition, undermines his contention that he had no vehicle for his claims.

Therefore, Defendants have demonstrated that the third element of res judicata—that the matter in the second case was, or could have been, resolved in the first—is present here. Having established all necessary elements, they have shown that res judicata bars Scott's claims.[7]

### 2. Collateral Estoppel

Defendants also argue that, because of the state-court action, collateral estoppel precludes this action. Maddin Mot. to Dismiss at 9–13; BANA Mot. to Dismiss at 10–14. As noted above, federal courts must give state-court judgments the same preclusive effect that the state would

---

[7] Scott does not dispute the existence of the first element—that the prior action was decided on the merits. Adair, 680 N.W.2d at 396. The Court notes that this element is satisfied. A grant of summary disposition is a judgment on the merits that bars relitigation on the basis of res judicata. See Roberts v. City of Troy, 429 N.W.2d 206, 211 (Mich. Ct. App. 1998). In affirming the Oakland County Circuit Court's grant of summary disposition, the Michigan Court of Appeals also reached a decision on the merits.

afford such judgments.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005).  Therefore, Michigan law of collateral estoppel determines the preclusive effect of the judgments of the Oakland County Circuit Court and the Michigan Court of Appeals.

"Whereas res judicata involves preclusion of entire claims, collateral estoppel focuses on specific issues within an action." Mecosta Cnty. Med. Ctr. v. Metropolitan Grp. Prop. and Casualty Ins. Co., Nos. 161628, 161650, 2022 WL 2104120, at *4 (Mich. June 10, 2022).  Collateral estoppel bars the relitigation of issues that have been actually determined in a prior lawsuit between parties or their privies.  Bryan v. JPMorgan Chase Bank, 848 N.W.2d 482, 486 (Mich. Ct. App. 2014).  Like res judicata, its purpose is "to shield litigants (and the judicial system) from the burden of re-litigating identical issues and to avoid inconsistent results." Gilbert v. Ferry, 413 F.3d 578, 580 (6th Cir. 2005).

Under Michigan law, "for collateral estoppel to apply three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel." Monat v. State Farm Ins. Co., 677 N.W.2d 843, 845–846 (Mich. 2004) (punctuation modified).  However, mutuality of estoppel—which states that "in order for a party to estop an adversary from relitigating an issue[,] that party must have been a party, or in privy to a party, in the previous action"—is not required when collateral estoppel is used defensively.  Id. at 850.  Because Maddin and BANA use defensive collateral estoppel in this case, mutuality is not required, and Scott's argument that collateral estoppel does not apply in part because Maddin was not a party to the state-court case, Resp. to BANA Mot. to Dismiss at 9, fails.

The Court examines whether the remaining elements of collateral estoppel are satisfied. As the parties invoking the doctrine, Defendants bear the burden of proving that it applies. Cent. Transp., Inc. v. Four Phase Sys., Inc., 936 F.2d 256, 260 (6th Cir. 1991).

### a. Question of Fact Essential to the Judgment Was Actually Litigated and Determined by a Valid and Final Judgment

The first element requires that the ultimate issue to be determined in the subsequent action be the same as the issue involved in the first action. Rental Props. Owners Ass'n of Kent Cnty. v. Kent Cnty. Treasurer, 866 N.W.2d 817, 834 (Mich. Ct. App. 2014). The common ultimate issues "must be identical, and not merely similar." Id. In addition, the issue must have been actually litigated. "To be actually litigated, a question must be put into issue by the pleadings, submitted to the trier of fact, and determined by the trier [of fact]." Id. at 835. And the issue must be determined by a valid final judgment. "[F]or purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Radwan v. Ameriprise Ins. Co., 933 N.W.2d 385, 390 (Mich. Ct. App. 2018) (punctuation modified).

As discussed above, the actual issue of whether Scott made his monthly mortgage payments based on checks tendered to Maddin and whether those payments were properly applied was actually litigated in state court. It was put at issue by Scott's pleadings, his response to Wilmington's motion for summary disposition in the Oakland County Circuit Court, and his arguments before the Michigan Court of Appeals. It was determined by Judge Matthews when she found that some of the checks delivered to Maddin were not written for the required amount. 6/28/19 Op. and Order at 5, Wilmington, No. 17-161749-CH. And it was again determined by the Michigan Court of Appeals when the court found that the 2013 to 2015 checks submitted to Maddin represented properly rejected, insufficient partial payments because they were written for $2,888.98, and, therefore, did not cover the $3,102.07 that the magistrate judge in the 2012 case

found Scott owed for each of July, August, and September 2012. <u>Wilmington</u>, No. 344903 at 4–5.

This is the same issue that Scott raises through his allegations in this action and that forms the basis of his alleged injuries.  He alleges that he followed the terms of Judge Lawson's order by making the required payments in the proper amount to Maddin and that, from 2004 to 2017, he made all payments on time and in full.  Compl. ¶¶ 23–25, 29, 32.  However, because of Maddin's mishandling and BANA's consequent assignment of his mortgage with an erroneous payment history—in addition to BANA's failure to credit payments in excess of the minimum required payment, that is, the checks for $2,888.98—he was wrongfully subjected to foreclosure. <u>Id.</u> ¶¶ 13–14; 25–32; Resp. to BANA Mot. to Dismiss at 1–2, 5–7.

Scott contends that the ultimate issue in this case is different because the issue this case presents is "whether Bank of America and Maddin Hauser, either fraudulently or negligently, or otherwise, caused Defendant's Mortgage to be assigned with bad and/or erroneous payment history."  Resp. to BANA Mot. to Dismiss at 16.  But the state-court litigation encompassed this issue.  If Scott did not pay the correct amount through his checks to Maddin and if it was proper for BANA to reject insufficient payments and not apply them to Scott's mortgage, then neither Defendant could have caused the assignment of a mortgage with an erroneous payment history.  And, particularly, they could not have caused the assignment of a mortgage with an erroneous payment history based on improper loan handling or application of payments.

Because the same issue that forms the basis of Scott's claims in this action was actually litigated and determined by a valid and final judgment in the state-court litigation, the first element of collateral estoppel is satisfied.

**b. Full and Fair Opportunity to Litigate the Issue**

Collateral estoppel prevents a party from relitigating an issue that the party has already had a full and fair opportunity to litigate in a prior suit. Monat, 677 N.W.2d at 850. The Michigan Supreme Court has explained that, in determining whether a party has had a "full and fair" opportunity to litigate the issue concerning his or her alleged injury, courts should look to the factors set forth in §§ 28–29 of the Restatement (Second) of Judgments. Id. at 847 n.2. It has stated that the "general rule" of collateral estoppel permits relitigation when "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action." Id. at 847 (emphasis in original). "[T]he 'full and fair opportunity to litigate' normally encompasses the opportunity to both litigate and appeal." Id.

Here, Scott could have, and did, obtain review of the Oakland County Circuit Court judgment, first by the Michigan Court of Appeals and then through his application for leave to appeal filed with the Michigan Supreme Court. He had the opportunity to both litigate and appeal. Moreover, none of the exceptions to the general rule that a party may not relitigate an issue in a subsequent action, as described in the Restatement, is present here. See Monat, 677 N.W.2d at 847 n.2 (listing factors in §§ 28–29 of the Restatement (Second) of Judgments).

Scott contends, however, that "new evidence" could not be provided during the state-court action "because discovery was precluded due to representations by [Wilmington] that full and adequate discovery had already been conducted in a prior case." Resp. to BANA Mot. to Dismiss at 16. Scott does not specify what this "new evidence" is. In his complaint, he alleges BANA sent him letters in 2017 that contained payment discrepancies and incorrect statements about his loan balance. See Compl. ¶ 18. And, elsewhere in the response, he refers to relevant evidence that he discovered "late in 2017." Resp. to BANA Mot. to Dismiss at 15. As previously explained, the state-court litigation was still ongoing and had yet to determine the issues at this time. To the extent Scott disputes the Oakland County Circuit Court's ruling on the motion for summary

disposition before discovery had closed, Judge Matthews determined that further discovery would not lend support to Scott's position that he had made his mortgage payments, and the Michigan Court of Appeals affirmed this decision.

Because Scott had a full and fair opportunity to litigate the issue of whether he made proper payments by tendering checks to Maddin, whether he was current on his loan, and whether those payments were properly applied—which forms the basis of his claims for relief—the second element of collateral estoppel is satisfied.

Because all necessary elements are established, collateral estoppel precludes this action.

### B. Request for Attorney Fees in Motions to Dismiss

In the motions to dismiss, Maddin and BANA assert that, pursuant to 28 U.S.C. § 1927, they are entitled to an award of attorney fees and costs incurred in filing the motions because Scott's counsel, who represented Scott in state court, should know that the action lacks merit, is vexatious, and was unreasonably filed. Maddin Mot. to Dismiss at 24–25; BANA Mot. to Dismiss at 25.

Federal courts have inherent powers to impose sanctions under § 1927. DiPonio Const. Co., Inc. v. Int'l Union of Bricklayers and Allied Craftworkers, Local 9, 687 F.3d 744, 752 (6th Cir. 2012). The statute provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Under this provision, a court may assess fees "when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." Jones v. Cont'l Corp., 789 F.2d 1225, 1230 (6th Cir. 1986). A finding of bad faith is not necessary under § 1927. Dixon v. Clem, 492 F.3d 665, 679 (6th Cir. 2007). However, the attorney's misconduct "must amount to more than simple inadvertence or negligence that has frustrated the trial judge." Holmes v. City of Massillon, Ohio, 78 F.3d 1041,

1049 (6th Cir. 1996).  Rather, "[t]here must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party."  Riddle v. Egensperger, 266 F.3d 542, 553 (6th Cir. 2001) (punctuation modified).  The burden of proof is on the party seeking attorney fees under § 1927.  See Cook v. American S.S. Co., 134 F.3d 771, 776 (6th Cir. 1998).

The Court finds that, in filing the complaint, Scott's counsel did not engage in conduct that multiplied the litigation unreasonably or vexatiously.  "Since the plain language of the statute . . . penalizes [only] attorneys who vexatiously and unreasonably 'multiply' proceedings, [c]ourts generally do not impose sanctions under 28 U.S.C. § 1927 based on the filing of an initial complaint that turns out to be meritless."  Beverly v. Shermetta Legal Grp., No. 2:19-CV-11473, 2020 WL 2556674, at *1 (E.D. Mich. May 20, 2020); see also Schmitzer v. Cnty. of Riverside, 26 F. App'x 701, 703 (9th Cir. 2002) (finding that plaintiff's counsel "caused only a single additional proceeding—summary judgment," which, because it "resolved the underlying dispute" and "brought the case to a conclusion," did not "multiply" the proceedings"); Jensen v. Phillips Screw Co., 546 F.3d 59, 65 (1st Cir. 2008) (explaining that "multiply" involves conduct that "has an effect on an already initiated proceeding" and, therefore, joining "an unbroken band of cases across the courts of appeals holding that a lawyer cannot violate section 1927 in the course of commencing an action"); BAC Home Loans Servicing, L.P. v. Wells Fargo, N.A., No. 11–10327, 2013 WL 1147761, at *5 (E..D. Mich. March 19, 2013) (finding that plaintiff's counsel did not unreasonably "multiply" the proceedings when plaintiff presented a claim that was determined not to be frivolous, the motion practice was "relatively succinct," and "there was no evidence of abusive conduct, such as prolonged discovery that yielded no evidence").  The Court also finds that Defendants have not shown that the conduct Scott's counsel engaged in "falls short of the

obligations owed by a member of the bar to the court." <u>Riddle</u>, 266 F.3d at 553.  Therefore, the Court denies Defendants' request for attorney fees.

In its motion to dismiss, BANA also requests that the Court consider imposing pre-filing restrictions on Scott.  BANA Mot. to Dismiss at 24.  The Court declines to grant such relief at this time, but any future filing by Scott will be thoroughly reviewed to determine if he has become an abusive filer.

### C. Motion for Sanctions

Maddin filed a motion for Rule 11 sanctions, contending that Scott and his counsel filed and maintained the complaint even though they knew that the allegations are not grounded in good faith and lack factual and legal support, as they have been rejected in three prior lawsuits.  Maddin Mot. for Sanctions at 9–10.  Maddin argues that, even if Scott did have a good faith basis for pursuing the claims, he failed to raise the claims in any of his prior suits.  <u>Id.</u> ¶ 5.  And it asserts that Scott has pursued this case for improper purposes, which include to "(1) thwart the foreclosure process permitted by the Foreclosure Judgment; (2) improperly seek money damages from Maddin; and (3) harass Maddin and cause it to needlessly incur attorney fees and resources."  <u>Id.</u> In the remainder of its motion, Maddin repeats the arguments it makes in its motion to dismiss as to why Scott's claims should be dismissed, but it states that Scott and his counsel know that his claims fail for these various reasons.  <u>Id.</u> at 11–19.  It asks the Court to find that Scott and his counsel violated Rule 11 and "set the matter for a determination of the appropriate sanctions."  <u>Id.</u> at 3.

Maddin represented that it complied with Rule 11's safe harbor provision by serving its motion for sanctions on Scott's counsel and allowing him 21 days to dismiss this action before filing the motion with the court.  <u>Id.</u> ¶ 8; <u>see</u> <u>Ridder v. City of Springfield</u>, 109 F.3d 288, 297 (6th Cir. 1997) (describing safe harbor provision).  The Court, therefore, addresses the merits of the motion.

24

Rule 11 states that, by presenting to the court a pleading, motion, or other paper, an attorney certifies "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the following is true of that filing:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase in the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1)-(3).

The rule imposes a "continual obligation" on attorneys to "refrain from pursuing meritless or frivolous claims at any stage of the proceedings." Merritt v. Int'l Ass'n of Machinists & Aerospace Workers, 613 F.3d 609, 627 (6th Cir. 2010) (punctuation modified). The test for whether Rule 11 sanctions are appropriate is whether the individual's conduct for which sanctions are sought was "reasonable under the circumstances." Tropf v. Fidelity Nat'l Title Ins. Co., 289 F.3d 929, 939 (6th Cir. 2002) (punctuation modified). The purpose of the rule is to "deter baseless filings in district court." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). A district court has broad discretion in determining whether to impose sanctions. DiPonio Const. Co., Inc., 687 F.3d at 752.

The Sixth Circuit has held that, "[a]s a general proposition, a district court should be hesitant to determine that a party's complaint is in violation of Rule 11(b) when the suit is dismissed pursuant to Rule 12(b)(6)," at which point there is ordinarily little evidence before the court. Tahfs v. Protor, 316 F.3d 584, 594–595 (6th Cir. 2003) (explaining that "[a] complaint does not merit sanctions under Rule 11 simply because it merits dismissal

25

pursuant to Rule 12(b)(6)."). It has also emphasized that courts should not equate claims "[un]warranted by existing law, as the expression is used in Rule 11(b)(2)" to all claims that fail to satisfy Rule 12(b)(6) because "Rule 11 is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Id. (punctuation modified). In Tahfs, the court, considering an award of monetary sanctions, found that, even though the suit was dismissed for failure to state a claim, sanctions were not warranted because the complaint "was not completely unwarranted by existing law." Id. at 594. It also noted that, while the complaint included only conclusory assertions and failed to plead with requisite specificity, it "did not fail in this endeavor by a wide margin." Id.

Similarly, here, Scott's complaint was not "wholly lacking in arguable legal merit," and the allegations were not "completely unwarranted by the evidence." E.E.O.C. v. Pines of Clarkston, Inc., No. 13–CV–14076, 2014 WL 6612375, at *1 (E.D. Mich. Nov. 20, 2014) (examining motion for sanctions at the pleading stage). For example, the issue of privity—involving a functional analysis—is one for which good faith arguments can be made going both ways. Further, there is insufficient basis to find that Scott filed and maintained the complaint to harass Maddin and to cause it to needlessly incur costs.

Therefore, the Court denies Maddin's motion for Rule 11 sanctions.

### III. CONCLUSION

For the reasons set forth above, the Court grants Maddin's motion to dismiss (Dkt. 12), grants BANA's motion to dismiss (Dkt. 14), denies the request for attorney fees contained in the motions, and denies Maddin's motion for sanctions (Dkt. 16).

SO ORDERED.

Dated: September 29, 2022           s/Mark A. Goldsmith
       Detroit, Michigan           MARK A. GOLDSMITH
                                   United States District Judge